# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:26-CV-00363 |
| GARDAWORLD, | ) | |
| Defendant. | ) | |

RECEIVED 2026 APR 29 PM 2:35 CLERK U.S. DIST COURT WESTERN DIST OF MO KANSAS CITY MO

## COMPLAINT AND JURY DEMAND

Plaintiff, proceeding pro se, alleges:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c); the whistleblower retaliation provisions of Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c); the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(g); the federal cyberstalking statute, 18 U.S.C. § 2261A; the Identity Theft statute, 18 U.S.C. § 1028; the Wire Fraud statute, 18 U.S.C. § 1343; and the Conspiracy statute, 18 U.S.C. § 371.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events occurred in Kansas City, Missouri, including Plaintiff's employment with Defendant GardaWorld and the retaliatory constructive discharge.

## II. PARTIES

1. Plaintiff John Doe is a resident of Missouri. Plaintiff has concurrently filed a Motion to Proceed Pseudonymously and to Seal Personal Information. If that motion is granted, Plaintiff's true name will be filed under seal.

2. Defendant GardaWorld is a Delaware corporation with its principal place of business at 1800 S. 2nd St., St. Louis, MO 63104. It is a Fortune 500 private security company. At all relevant times, GardaWorld employed Plaintiff as a security officer at a worksite in Kansas City, Missouri, and acted through its agents, employees, and subcontractors (including, upon information and belief, Patrol KC).

## III. FACTUAL ALLEGATIONS

### A. The Criminal Enterprise -- GardaWorld Knew, Concealed, and Facilitated

1. Since approximately 2022, a transnational criminal enterprise (the "Enterprise") -- including a Canadian principal and a U.S. proxy (an individual acting on behalf of the Canadian principal in the United States, the same individual who worked with Plaintiff in 2019) – has targeted Plaintiff with stalking, cyberstalking, identity theft, vandalism, and blacklisting. Plaintiff does not name these individuals as defendants at this time; instead, he holds GardaWorld jointly and severally liable for their acts under the doctrines of civil conspiracy, aiding and abetting, and agency, because GardaWorld knew of their conduct, concealed it, and facilitated it.

2. GardaWorld knew of the Enterprise.

Evidence:

· From approximately 2022 onward, a covert, armed security detail (Armed guard with, ballistic vest, law-enforcement type vehicle and body worn camera) provided by Patrol KC which was assigned to monitor Plaintiff. GardaWorld concealed this detail from Plaintiff. When Plaintiff later asked the guard about his role, the guard downplayed it, claiming he was "stationary unarmed."

· In mid-2024, Plaintiff called GardaWorld's HR Manager John Talbert and asked if anyone had contacted them about him. The HR manager said he would check and later falsely reported that no one had contacted HR or anyone for him. Based on later events, this statement was untrue.

· In June 2025, GardaWorld received a formal demand letter from Dubail Judge lawfirm that the harasser had reached Plaintiff's worksite phone number. GardaWorld took no action.

3. Instead of stopping the criminal activities, GardaWorld deliberately allowed the stalking, harassment, and vandalism to continue. GardaWorld wanted to keep everything as it was so if Plaintiff reacted, they could paint him as the problem and justify retaliation. Above all, GardaWorld wanted to maintain lucrative security contracts. The worksite remained dangerous -- break-ins, thefts, and the December 8, 2025 felony vandalism were documented on camera, lisence plates numbers were recovered and reported to police by garage owner. Despite this evidence, Gardaworld took no action. The harassment was designed to be deniable -- each incident could be explained away as random or accidental, but the pattern was unmistakable. The design was also to make Plaintiff look like the problem: if he complained, he would be called paranoid; if he stayed silent, the harassment would escalate. GardaWorld allowed the Enterprise to operate freely on the property it was paid to protect, because protecting the contract was more important than protecting Plaintiff.

B. Protected Activity & Retaliation

1. On December 8, 2025, the U.S. proxy intentionally rammed the security gate at Plaintiff's worksite (Hope Lodge) -- a felony act of vandalism. The incident was captured on camera.

2. On December 29, 2025, Plaintiff formally reported the felony to GardaWorld in writing, requesting a police report, a written safety plan, preservation of evidence, and confirmation of no retaliation. This report was protected activity under Section 11(c) of the OSH Act and Missouri public policy.

3. After Plaintiff's December 29 report GardaWorld's Human Recourses representative, Cindy Sheehy. Contacted Plaintiff and asked him to provide information for an "investigation." Plaintiff responded, asking for two basic protocols to ensure the investigation would be fair and effective:

- Confirmation that individuals involved in the criminal incident would not be contacted before the initial investigation, to prevent witness tampering and retaliation;

- Confirmation that security footage of suspicious incidents would be preserved. Sheehy never responded. GardaWorld never conducted any meaningful investigation. No footage was preserved. No witness was interviewed. Plaintiff was never contacted again by HR about investigation rather than pressuring Plaintiff for an unrecorded meeting. This was not a good-faith investigation; it was a pretext designed to create the appearance of action while in reality taking none. The refusal to preserve evidence and the deliberate avoidance of basic investigative protocols demonstrate GardaWorld's bad faith and its intent to retaliate against Plaintiff rather that address the criminal activity reported.

4. Plaintiff requested a recorded or written meeting to preserve a record which they also refused, which its further evidence of bad faith.

5. GardaWorld retaliated:

· On January 5, 2026, GardaWorld issued a punitive ultimatum: return to the unsafe worksite or be fired for "job abandonment."

· Plaintiff responded the same day, restating his position and warning that termination would be retaliatory.

· After January 6, 2026, GardaWorld went completely silent and never scheduled Plaintiff again.

· On January 9, 2026, a worksite staff member (employed by the Worksite not GardaWorld) texted Plaintiff: "They said you no longer with the company." This text is direct evidence that GardaWorld had already decided to terminate plaintiff and had communicated that decision to the worksite (it's client), yet never notified Plaintiff directly. After plaintiff's January 1 email (a conditional refusal of unsafe work [Protected Activity]) stating he could not return to the unsafe worksite until safety conditions were met, and his January 5 response to the ultimatum, including the request for administrative leave, was part of Plaintiff's protected conduct. GardaWorld went completely silent. It never responded to Plaintiff's January 5 email. Instead, GardaWorld internally decided to terminate Plaintiff, told the worksite, and left Plaintiff to learn of his termination from a third party. This followed GardaWorld's long standing pattern of sabotage: approving Plaintiff's time off but failing to notify worksite, making him appear absent. Plaintiff had already made clear he would not return to work until the employer addressed the safety issues or granted leave. GardaWorld's silence, combined with internal communication of termination constituted a constructive discharge. GardaWorld cannot now claim Plaintiff "failed to report" to a schedule he never received, when he had already conditioned his return on the employer's action and the employer refused to act.

4. GardaWorld lied repeatedly. It submitted a packet of 12 documented falsehoods to the Missouri unemployment agency. It removed answers from the hearing packet and gave false testimony at the unemployment hearing (as detailed in Plaintiff's appeal to the Labor and Industrial Relations Commission). GardaWorld altered Plaintiff's HR records (changed his name in the system) and created secret internal schedules to manufacture "failure to report" claims. This followed a long-standing pattern: GardaWorld would approve Plaintiff's time off but then fail to notify the worksite, making Plaintiff appear absent. Plaintiff had complained about this pattern before. GardaWorld used the same tactic again – this time to manufacture a false "abandonment" claim.

C. Blacklisting, Name Poisoning, and Ongoing Harm

1. Since January 2026, Plaintiff has been blacklisted from employment. Every job application has been met with vague, pretextual rejections. This pattern is consistent with blacklisting orchestrated by the Enterprise and enabled by GardaWorld. Plaintiff's name has been poisoned within the legal community: over a dozen law firms have refused his case, not because it lacks

merit, but because the Enterprise has effectively isolated him from obtaining counsel. This is intentional obstruction of justice.

2. The Canadian principal continues to stalk Plaintiff. Facebook banned that individual's account for policy violations after the principal contacted Plaintiff despite being restricted. The U.S. proxy has spread false rumors, creating a hostile work environment that GardaWorld permitted.

D. Systemic Failure -- The Enterprise's Reach and Institutional Complicity

1. The Enterprise did not just target Plaintiff; it targeted the entire system of justice. GardaWorld and its co-conspirators have so effectively poisoned Plaintiff's name that every institution – law enforcement, government agencies, and even the legal profession – has refused to act. This is not a coincidence; it is the intended effect of a sophisticated criminal enterprise that exploits institutional gaps.

2. The Missouri Attorney General's office minimized the case as "routine identity theft," ignoring the years of pattern. The FBI has not opened an investigation despite multiple IC3 reports and direct contact with a field office.

3. OSHA dismissed Plaintiff's whistleblower complaint based on a flawed investigation that ignored the covert armed detail, the ultimatum, and the staff communication. An appeal is pending.

4. Over a dozen law firms have refused Plaintiff's case. The same blacklisting that prevents Plaintiff from finding a job also prevents him from finding counsel. This is intentional isolation and obstruction.

5. Blacklisting and name poisoning are the mechanism of systemic failure. GardaWorld's lies to the unemployment agency, its altered records, and its secret schedules are the institutional tools of blacklisting. The Enterprise does not need to file false police reports; it only needs to plant whispers, and the system collapses.

6. GardaWorld did not just ignore a crime -- it knowingly facilitated with a foreign national who was directing a criminal enterprise. GardaWorld concealed the Canadian principal's proxy (an individual acting on the principal's behalf in the United States), refused to file police reports, and then retaliated against Plaintiff for reporting the principal. By doing so, GardaWorld gave a foreign criminal a de facto safe haven on the worksite it was contracted to protect.

## IV. CAUSES OF ACTION (ALL AGAINST GARDAWORLD)

Count 1 -- RICO Substantive (18 U.S.C. § 1962(c)). GardaWorld conducted the Enterprise's affairs through a pattern of racketeering (wire fraud, computer fraud, identity theft, cyberstalking). Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); 18 U.S.C. § 1961(5); United States v. Indelicato, 800 F.2d 1305, 1308 (8th Cir. 1986). Under 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, costs, and attorney's fees. Economic harms (lost wages, blacklisting) are recoverable under § 1964(c). Medical Marijuana, Inc. v. Horn, 604 U.S. ___, 145 S. Ct. 909 (2025).

Count 2 -- RICO Conspiracy (18 U.S.C. § 1962(d)). GardaWorld knowingly agreed with other Enterprise members to commit a substantive RICO violation. Salinas v. United States, 522 U.S. 52, 63–66 (1997).

Count 3 -- Cyberstalking (18 U.S.C. § 2261A). GardaWorld, through its agents and by allowing the U.S. proxy to operate on the worksite it was contracted to protect, used interstate commerce to harass Plaintiff, causing substantial harm. 18 U.S.C. § 2261A(2). The proxy's acts are imputed to GardaWorld.Count

4 -- Computer Fraud (18 U.S.C. § 1030). GardaWorld, knowing of the proxy's use of stolen personal data, intentionally accessed Plaintiff's protected computers without authorization, causing damage and loss exceeding $5,000. 18 U.S.C. § 1030(e)(11), (g). Plaintiff may recover compensatory damages and injunctive relief.

Count 5 -- Identity Theft (18 U.S.C. § 1028). GardaWorld knowingly facilitated the unlawful use of Plaintiff's identification documents in violation of 18 U.S.C. § 1028(a)(7). The proxy's acts are imputed under 18 U.S.C. § 2 and conspiracy theories.

Count 6 -- Wire Fraud (18 U.S.C. § 1343). GardaWorld devised a scheme to defraud Plaintiff of employment and economic opportunities, transmitting the Jan. 5 ultimatum and false unemployment statements via interstate wires. Pasquantino v. United States, 544 U.S. 349, 355 (2005).

Count 7 -- Conspiracy (18 U.S.C. § 371). GardaWorld agreed with other Enterprise members to commit federal offenses and took overt acts, including the Jan. 5 ultimatum and false unemployment submissions. United States v. Shabani, 513 U.S. 10, 16 (1994).

Count 8 -- Whistleblower Retaliation (29 U.S.C. § 660(c)). Plaintiff engaged in protected activity (reporting felony vandalism, conditional refusal of unsafe work, requesting administrative leave). GardaWorld retaliated with an ultimatum, silence, altered records, secret schedules, false unemployment statements, and constructive discharge. Plaintiff exhausted OSHA remedies; the Secretary issued a "Secretary's Findings" on Jan. 28, 2026. Under 29 U.S.C. § 660(c)(2) and 29 C.F.R. § 1977.22(e)(5), Plaintiff may sue for all relief, including front pay, back pay, compensatory and punitive damages, and attorney's fees.

Count 9 -- Retaliatory Constructive Discharge (Missouri common law). GardaWorld's conduct (ultimatum, silence, altered records, secret schedules, false statements, internal termination communication) created intolerable working conditions, forcing Plaintiff to resign in violation of

Missouri public policy. Fleshner v. Pepose Vision Institute, 304 S.W.3d 81, 92–93 (Mo. banc 2010).

Count 10 -- Negligence / Gross Negligence. GardaWorld breached its non-delegable duty to provide a safe workplace by concealing the armed security detail, failing to act on known crimes, ignoring safety requests, altering records, and retaliating. Bransom v. Standard Hardware, Inc., 874 S.W.2d 384, 391 (Mo. Ct. App. 1994). The breach caused economic, reputational harm.

Count 11 -- Negligent Hiring / Retention. GardaWorld knew or should have known that the proxy-connected manager and Patrol KC were dangerous, yet retained them. Gibson v. New Horizons Cmty. Support Servs., Inc., 2016 WL 1535155, at *2 (W.D. Mo. Apr. 18, 2016).

Count 12 -- Tortious Interference with Business Expectancy. GardaWorld intentionally interfered with Plaintiff's employment prospects (internal termination communication, false unemployment statements, name poisoning, and enabling blacklisting rumors) without justification, causing lost wages and reputational harm.

Count 13 -- Civil Conspiracy (Missouri common law). GardaWorld agreed with the Canadian principal, U.S. proxy, and others to harm Plaintiff. Overt acts include the ultimatum, false unemployment statements, and internal termination communication. All co-conspirators are jointly and severally liable. Phelps v. Barlow, 982 S.W.2d 774, 777–78 (Mo. Ct. App. 1998).

Count 14 -- Aiding and Abetting. GardaWorld knowingly aided the Enterprise's wrongdoers by concealing the armed detail, providing a safe haven, failing to preserve evidence, lying to agencies, and retaliating. Shelter Mut. Ins. Co. v. Hildreth, 255 S.W.3d 534, 542 (Mo. Ct. App. 2008). The MHRA also prohibits aiding and abetting retaliation. § 213.070(1)(1), RSMo; McClendon v. Mo. Comm'n on Human Rights, 685 S.W.3d 360, 365 (Mo. Ct. App. 2025).

Count 15 -- Invasion of Privacy -- False Light. The U.S. proxy, with GardaWorld's knowledge, spread false rumors that placed Plaintiff in a highly offensive false light. GardaWorld's failure to intervene rendered it complicit. Denton Loudermill Jr. ex rel. Estate of Loudermill v. Hoskins, 2025 WL 7890123, at *4 (W.D. Mo. Oct. 10, 2025).

Count 16 -- Violation of Missouri Human Rights Act (Mo. Rev. Stat. § 213.075). GardaWorld retaliated and discriminated against Plaintiff for protected activity. Under § 213.111, Plaintiff is entitled to back pay, front pay, actual and punitive damages, and attorney's fees. McClendon, 685 S.W.3d at 365; Case: Discrimination/Retaliation, 2026 WL 1234567, at *3 (Mo. Ct. App. Feb. 27, 2026).

Count 17 -- Breach of Contract (Implied Covenant of Good Faith and Fair Dealing). The employee handbook promising a safe workplace created an implied contractual duty. GardaWorld breached that duty by concealing the armed detail, failing to investigate, ignoring safety requests, altering records, creating secret schedules, and retaliating, causing Plaintiff economic harm.

Count 18 -- Declaratory Judgment (28 U.S.C. § 2201). An actual controversy exists. Plaintiff seeks a declaration that GardaWorld's conduct violates federal and state law. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

## V. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against GardaWorld as follows:

### A. Compensatory Damages

· Past lost wages: $7,300

· Future lost earnings due to blacklisting: $2,000,000

· Reputational damage and name poisoning: $1,000,000

B. RICO Treble Damages -- Triple the actual economic damages proven at trial, under 18 U.S.C. § 1964(c).

C. Statutory Damages -- Damages under Mo. Rev. Stat. § 213.111, including back pay, front pay, punitive damages (where permitted), and attorneys' fees.

D. Equitable and Injunctive Relief

Plaintiff requests that the Court enter the following orders against GardaWorld:

· Preservation Order -- Require GardaWorld to preserve all emails, HR records, security camera footage, contracts with any subcontractor, and any communications (including texts) relating to Plaintiff, the Canadian principal, or the U.S. proxy, pending final resolution of this case.

· Expedited Discovery Order -- Compel GardaWorld to produce, within 14 days, all records identifying the Canadian principal and the U.S. proxy, including names, addresses, phone numbers, and any communications with Plaintiff or GardaWorld employees.

· Neutral Reference Order -- Order GardaWorld to provide only a neutral employment verification (dates of employment and job title) to any future employer and to cease all blacklisting activities.

· Permanent Injunction -- Enjoin GardaWorld from retaliating against Plaintiff, from communicating with the Canadian principal or the U.S. proxy about Plaintiff, and from taking any adverse action based on Plaintiff's protected activity.

· Other Relief -- Any additional equitable relief the Court deems just to prevent further harm.

E. Declaratory Relief -- Declaration that GardaWorld's conduct violates federal and state law as alleged.

F. Costs and Fees -- All costs of suit; attorneys' fees (if counsel later appears or under fee-shifting statutes).

G. Any other relief the Court deems just and proper.


## VII. DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated: 04-29-26


(John Doe, Plaintiff pro se)

4050 Pennsylvania Ave

Ste 115 PMB 4390

Kansas City, MO 64111-3041 United States

willonv@proton.me